IN THE
UNITED STATES DISTRICT COURT, FOR THE
NORTHERN DISTRICT OF INDIANA,
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v.        Plaintiff, | ) | No.  2:14 CR 129 |
| | ) | |
| | ) | Judge Joseph S. Van |
| | ) |  Bokkelen |
| *ETHEL SHELTON*, | ) | |
| | ) | |
| Defendant. | ) | |

*ETHEL SHELTON'S REPLY TO THE GOVERNMENT'S RESPONSE TO HER*
*MOTION FOR MISTRIAL*

DEFENDANT ETHEL SHELTON, through her attorney, respectfully requests that this Honorable Court grant her Motion for Mistrial and deny the government's response in objection to the Motion.  In support of this request, defendant Shelton, through counsel, states the following:

I.    Defendant has good cause for failing to raise the suppression issue prior to trial.

The Federal Rules of Criminal Procedure provide that certain motions, including a motion to suppress, must be made before trial, ***"if the basis for the motion is then reasonably available*** and the motion can be determined without a trial on the merits."  Federal Rule of Criminal Procedure 12(b)(3).  The basis for a motion to suppress was not reasonably available in this case, or the motion would have been made.  The facts and circumstances regarding how certain evidence was collected and under whose direction was not disclosed until trial.

The government failed to disclose the information that Ms. Shelton would

1

have needed to file a pre-trial motion to suppress the illegal search conducted by
Stafford Garbutt at the specific direction of the FBI agent in charge of Mr. Garbutt's
activities as an informant.  First, the government refused to disclose the name of
the confidential informant until immediately prior to trial.  Secondly, the
government did not at any time disclose that the documents collected by Mr.
Garbutt were collected at the specific direction of Agent Holbrook and clandestinely,
before office hours, to avoid detection by Ms. Shelton and others whose information
he purloined.  The fact that certain documents were collected, without the
knowledge that the items were not given to the Confidential Human Source, but
instead were surreptitiously taken by the source, was by itself insufficient for
proceeding on a pre-trial motion to suppress evidence.

The key pieces of information did not come to light until both Mr. Garbutt
and Agent Holbrook testified at trial.  Defense counsel cannot presume that the
government's agents acted illegally and at the direction of the FBI agent in charge,
without some good faith basis for doing so.  Ms. Shelton was unaware of Mr.
Garbutt's searches because he purposefully undertook them when no one else was
present to witness his conduct.  Without the testimony at trial, there was no basis
prior to trial for raising a pre-trial motion to suppress evidence, because the specific
conditions under which the evidence was acquired were withheld and not included
in any of the documents that were provided during discovery.  That is the crux of
the matter and heart of the Motion for Mistrial.

The government cannot refuse to disclose even the name of the Confidential

Human Source and the fact that documents taken by the source were done surreptitiously and at the request of the FBI agent handler, and then criticize the defense for failing to raise the issue prior to trial.  There is no basis in law to support the government's assertion, and the government has provided none.  The government fundamentally misunderstands the basis for the Motion and has not satisfactorily provided any reason for withholding the critical pieces of information upon which the motion is based.

Whether or not specific documents that were illegally taken from Ms. Shelton were introduced at trial also ignores the heart of the argument.  The information gathered by the illegal searches and seizures was used to obtain the search warrant in accordance with which a large part of the government's exhibits was obtained.  It is this evidence that constitutes the fruit of the poisonous tree and would have been the subject of the Motion to Suppress that would have been filed if the government had disclosed the relevant and critical information that it withheld and that only came out under cross-examination at trial.

The government cites to the "good cause" appellate standard to the case at bar before the District Court.  The citation to *United States v. Shorter,* 874 F.3d 969, 974-975 (7th Cir. 2017), Govt. Resp. 8, comes from a case in which the issues raised on appeal had not been raised *at all* in the District Court:

> having failed to raise any objection before the district court as to a
> defect [**12] in the indictment as required. *See* HN2 Fed. R. Crim. P.
> 12(b)(3) (if "reasonably available" and resolvable without a trial on the
> merits, a defendant must challenge a defect in an indictment by
> motion); Fed. R. Crim. P. 12(c)(3) (if a defendant fails to file such a
> pretrial motion, he or she must show "good cause" for raising this

argument for the first time on appeal). Since defendant makes no claim
that her challenges on appeal were unavailable in the district court,
nor that she had good cause for not raising them until on appeal,
her [*975] challenge to the indictment fails on that ground alone. *See
United States v. Acox*, 595 F.3d 729, 730-32 (7th Cir. 2010) (failure to
meet good cause standard is a sufficient ground to reject new argument
on appeal); *United States v. Johnson*, 415 F.3d 728, 730-31 (7th Cir.
2005) (same).

*United States v. Shorter*, 874 F.3d 969, 974-975, 2017 U.S. App. LEXIS 21768, *11-
12, 2017 WL 4942876.  The government's citation to *Acox* and *Johnson* are
unavailing for the same reason.

The government's citation of *United States v. Cardena,* 842 F.3d 959, 988-989
(7th Cir. 2016), does not support its position in this case.  At issue in *Cardena* was
the introduction into evidence of a photospread depicting only African-American
men, to which the defense objected at trial on foundational grounds.  On appeal, the
defendant objected to the photo-array on Due Process grounds, so the Seventh
Circuit treated the objection as a motion to suppress identification.  Unlike Ms.
Shelton's case, Cardena's lawyer had in hand all that he needed to raise his motion
to suppress identification prior to trial.  The Seventh Circuit rejected the
defendant's argument on appeal because there was nothing in the record to support
a finding under Federal Rule of Criminal Procedure 12(c)(3) that the defendant had
"good cause" for failing to file a pre-trial motion, challenging the suggestive nature
of the photo-array.

In this case, unlike in *Cardena,* the information upon which to base a pre-
trial motion to suppress evidence was not reasonably available to counsel, since the

facts and circumstances surrounding what time of day and under what conditions Stafford Garbutt conducted his search of Ms. Shelton's office and other areas to which he did not have access in the normal course of events without obtaining permission from either Ms. Shelton or Ms. Elgin, was not disclosed to defense counsel – nor was the identity of the confidential human source disclosed pre-trial. Furthermore, the fact that Garbutt undertook the search at the direction of the FBI agent was not disclosed.  This information, together with the clandestine nature of Garbutt's activities, is what turned a permissible collection of information from willing participants – like Ms. Shelton – into a government sponsored warrantless and illegal search and seizure.

Citation to *United States v. McMillan,* 786 F.3d 630, 636 (7th Cir. 2015), Govt. Resp. 9, does not aid the Court's inquiry in this case.  In *McMillan,* a pre-trial motion to quash arrest and suppress evidence was filed before the district court, relying on one set of facts.  On appeal, the defendant raised the failure to grant the motion to suppress relying on a different legal ground and asserting a different set of facts. The Court of Appeals denied the issue, finding that the defendant had not shown good cause in the district court for failing to raise the second ground in support of his motion.

Here, we have a situation – still before this District Court – in which the matter has been raised at the earliest moment the relevant information became available to counsel – after the testimony of both Stafford Garbutt and FBI Agent Holbrook, wherein the two testified for the first time that Mr. Garbutt's search had

been done without a warrant, surreptitiously before office hours, without the
consent of anyone, and at the specific direction of Agent Holbrook.

While it is true that the Seventh Circuit has found that good cause is an
"exacting standard", Govt. Resp. 9, that standard is clearly met when the basis for
the motion is not known before trial.  The *Suggs* court rejected a finding of good
cause under circumstances that are not at all similar to those in this case:

> By that time, the court said, new counsel had access to discovery
> materials for five months, yet he never moved to reopen the expired
> motion deadline. ***And nothing in the record suggests, the court
> continued, that the basis for the motion was previously
> unknown or that the need for such a motion came as a surprise.***

*United States v. Suggs*, 703 Fed. Appx. 425, 427, 2017 U.S. App. LEXIS 15933, *5,
2017 WL 3601277.  Unlike the situation in *Suggs,* the testimony at Ms. Shelton's
trial did come as a surprise to both defense counsel and to the Court.  The basis for
the motion was previously unknown, precisely because the government had not
disclosed it. A defendant cannot be expected to raise issues that are not apparent
from the discovery tendered, particularly when the critical information about the
nature and circumstances of an illegal search and seizure are withheld from the
defense.

The government suggests that the mere knowledge that the CHS "provided a
letter 'discovered on Shelton's desk' on December 5, 2013. (S-94)" should have
provided a basis for counsel to surmise that "discovered on Shelton's desk" meant
"illegally taken without Shelton's knowledge when the unidentified CHS went into
the offices before anyone else was there so that he could search for information to

provide at the specific request of the Agent in charge."  This is unreasonable, and certainly not what is meant in the rules by "if the basis for the motion is then reasonably available."  In light of the information that Ms. Shelton was recorded by the CHS and worked with the CHS, "discovered on Shelton's desk" could have meant that Shelton provided the information to the CHS, that someone else with permission to do so had provided the information to the CHS, or that the information was "discovered" in a legal manner and with permission of Ms. Shelton during working hours.  There was simply no basis for filing a complaint about an illegal search, when no such search was described until the testimony of Garbutt and Holbrook at trial.  Ms. Shelton has amply demonstrated "good cause" for failing to raise the illegal nature of the search and seizure prior to trial.

II.     The surreptitious and warrantless search of Ms. Shelton's office, and the filing cabinets and storage areas over which she had authority not shared with Mr. Garbutt, was not permissible, but an illegal violation of Ms. Shelton's rights under the Fourth Amendment to the United States Constitution.

The government concedes, as it must, based on the testimony at trial, that Stafford Garbutt was acting as a government agent when he conducted the search and seizure of documents and other information from Ms. Shelton's office, and filing cabinets and storage areas over which she had authority not shared with Mr. Garbutt.  Govt. Resp. 11.  *See, e.g., Coolidge v. New Hampshire,* 403 U.S. 443, 487 (1971); *United States v. McAllister,* 18 F.3d. 1412, 1417-1418 (7th Cir. 1994); *Michael C. v. Gresbach,* 526 F.3d 1008, 1014 (7th Cir. 2008).  It is equally undisputed that

the searches and seizures undertaken by Mr. Garbutt were warrantless.  Govt.

Resp. 11-12, fn. 6.

In urging this Court to reject Ms. Shelton's motion for mistrial, the

government argues first that Ms. Shelton had no reasonable expectation of privacy

in her office, and secondly, that she had no standing to raise the First Amendment

in challenging the warrantless seizure of documents from her office.  The

government's position is incorrect, and fails to address in any way its own failure to

reveal discoverable information under *Brady, Giglio* and their progeny.

A.    Ms. Shelton had a reasonable expectation of privacy in her office.

The Seventh Circuit has held that:

There is no dispute that HN5 "[w]arrantless searches are presumptively
unreasonable under the Fourth Amendment." *United States v. Strache*, 202 F.3d
980, 984 (7th Cir. 2000). Therefore, "[i]n the absence of a warrant, a search is
reasonable only if it falls within a specific exception to the warrant requirement."
*Riley v. California*, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014).

*United States v. Thurman*, 889 F.3d 356, 365, 2018 U.S. App. LEXIS 11397, *15.

The government concedes that no "exception to the warrant requirement existed

which would have permitted Garbutt to enter her office."  Govt. Resp. 11-12, fn. 6.

This must be the end of the matter.  The government did not have probable cause

and did not seek a warrant to permit Stafford Garbutt to search Ms. Shelton's office,

desk, filing cabinet, storages areas, or any other place over which she maintained

authority exclusive of Stafford Garbutt.  The government failed to disclose the

information about the search that would have permitted the matter to be raised

pre-trial, in violation of its obligations under *Brady* and *Giglio*. The appropriate remedy for this conduct is to grant the defendant's Motion for Mistrial.

Instead, the government argues that Ms. Shelton had no reasonable expectation of privacy in her office, based on two provisions of the Employee Handbook and the Supreme Court's decision in *O'Connor v. Ortega,* 480 U.S. 709 (1987), a case that addressed the right to privacy in a workspace in the context of an appeal from the granting of a Motion for Summary Judgment in a civil case. In *Ortega*, the Court distinguished between the expectation of privacy against an employer's search as opposed to the Fourth Amendment's protection against a search by law enforcement. The Supreme Court's decision did not leave public employees without any Fourth Amendment protection against law enforcement searches of their workspaces. In so far as the government suggests that Ms. Shelton had no reasonable expectation of privacy in her office, this is incorrect.

In the context of a ***law enforcement search***, while the "touchstone" of a search is reasonableness, a warrantless search is presumptively unreasonable:

> As the text makes clear, HN2 LEdHN[2] [2] "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City* v. *Stuart*, 547 U. S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006). Our cases have determined that "[w]here a search is undertaken by law [***15] enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Vernonia School Dist. 47J v. Acton*, 515 U. S. 646, 653, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995). Such a warrant ensures that the inferences to support a search are "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often-competitive enterprise of ferreting out crime." *Johnson* v. *United States*, 333 U. S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948). ***In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.*** See

9

*Kentucky* v. *King*, 563 U. S. 452, 460, 131 S. Ct. 1849, 179 L. Ed. 2d
865 (2011.

*Riley v. California*, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430, 439, 2014 U.S.

LEXIS 4497, *14-15, 82 U.S.L.W. 4558, 42 Media L. Rep. 1925, 24 Fla. L.

Weekly Fed. S 921, 60 Comm. Reg. (P & F) 1175, 2014 WL 2864483.  Nothing

in the Supreme Court's *Ortega* decision contradicts the appropriate analysis

when a law enforcement search is in question, rather than an employer's

search.  Signing an Employee Handbook does not constitute a waiver of one's

Fourth Amendment rights, and no court's decision supports such an

interpretation.

The provisions of the Employee Handbook cited by the government,

Govt. Resp. 14, limit the reasons for which the CTTO [Calumet Township

Trustee's Office] *reserves* the right to inspect personal property to situations

in which theft or security are in issue.  The provisions do not provide blanket

permission to for anyone, let alone law enforcement, to conduct searches and

seizures without reason to believe that theft or security issues are present,

and it does not authorize such searches or seizures except when employees

are on the premises or are conducting CTTO business.  None of these

conditions applied to the warrantless searches and seizures conducted by

Stafford Garbutt at the FBI agent's direction.

The government stretches the meaning of the Supreme Court's

opinions in *Ortega*, in asserting that Ms. Shelton had no expectation of

privacy in her workspace, and in applying some of the findings of some of the
court to deny Ms. Shelton her legitimate right to be free from the
unreasonable searches and seizures of law enforcement.  In the first instance,
there was no single opinion in *Ortega:*

> (2) five members of the court agreed that the doctor had a reasonable
> expectation of privacy in his office, and (3) all the members of the court
> agreed that the doctor had a reasonable expectation of privacy in his
> desk and file cabinets.  O'Connor v. Ortega, 480 U.S. 709, 711, 107 S.
> Ct. 1492, 1494, 94 L. Ed. 2d 714, 719, 1987 U.S. LEXIS 1507, *1, 55
> U.S.L.W. 4405, 42 Empl. Prac. Dec. (CCH) P36,891, 1 I.E.R. Cas.
> (BNA) 1617.

Furthermore, all members of the Court agreed that "Public employees do not lose
their reasonable expectation of privacy in their place of work merely because they
work for the government instead of a private employer; ***the Fourth Amendment's
protection against unreasonable searches by the government does not
disappear merely because the government has the right to make reasonable
intrusions in its capacity as employer.*** [Per all members of the court.]  *O'Connor
v. Ortega*, 480 U.S. 709, 711, 107 S. Ct. 1492, 1494, 94 L. Ed. 2d 714, 719, 1987 U.S.
LEXIS 1507, *1, 55 U.S.L.W. 4405, 42 Empl. Prac. Dec. (CCH) P36,891, 1 I.E.R.
Cas. (BNA) 1617.

   With respect to searches and seizures by law enforcement, the *Ortega* court
cited to two cases, *Mancusi v. DeForte,* and *Oliver v. United States,* for the
proposition that offices, like homes, are environments in which there is a legitimate
expectation of privacy:

Within the workplace context, this Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police. See *Mancusi* v. *DeForte*, 392 U.S. 364 (1968). As with the expectation of privacy in one's home, such an expectation in one's place of work is "based upon societal expectations that have deep roots in the history of the Amendment." *Oliver* v. *United States, supra*, at 178, n. 8. Thus, in *Mancusi* v. *DeForte, supra*, the Court held that a union employee who shared an office with other union employees had a privacy interest in the office *sufficient to challenge successfully the warrantless search of that office*:

"It has long been settled that one has standing to object to a search of his office, as well as of his home. . . . [It] seems clear that if DeForte had occupied a 'private' office in the union headquarters, and union records [****16] had been seized from a desk or a filing cabinet in that office, he would have had [***723] standing. . . . In such a 'private' office, [*717] DeForte would have been entitled to expect that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission or that of his union superiors." 392 U.S., at 369.

*O'Connor v. Ortega*, 480 U.S. 709, 716-717, 107 S. Ct. 1492, 1497, 94 L. Ed. 2d 714,

722-723, 1987 U.S. LEXIS 1507, *15-16, 55 U.S.L.W. 4405, 42 Empl. Prac. Dec.

(CCH) P36,891, 1 I.E.R. Cas. (BNA) 1617. Nothing in the *Ortega* decision supports

a finding that the fact that an employer may search an office to discover stolen

documents or protect employee security abrogates an employee's legitimate

expectation of privacy in her office or her Fourth Amendment rights against

unreasonable searches of law enforcement. In fact, precisely the opposite is true:

> Given the societal expectations of privacy in one's place of work expressed in both *Oliver* and *Mancusi*, we reject the contention made by the Solicitor General and petitioners that public employees can never have a reasonable expectation of privacy in their place of work. Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer. The operational realities of the workplace, however, may make *some*

employees' expectations of privacy unreasonable when an intrusion is
by a supervisor rather than a law enforcement official.

*Id.* [1] The government has not provided any reason, or case law, for

invalidating the presumption of unreasonableness that attaches when law

enforcement conducts a warrantless search, as set out in the Court's more

recent opinion of the application of the Fourth Amendment to law

enforcement searches and seizures, in *Riley,* cited above.

Even if this Court were to deviate from settled law on the *per se*

unreasonableness of warrantless searches and seizures, there is no evidence

in the record before the Court that CTTO ever enforced the provisions of its

handbook in the case of theft or security considerations, such that it would be

reasonable for an individual to have no expectation of privacy in her

---

[1] Similarly, the government's citation to this Court's decision in *Snider v. Pekney*,
has no bearing on the case at bar, because it, too, was addressing the rights of
employers to search the lockers or workspaces of employees – subject to a different
standard than the warrant and probable cause requirements when law enforcement
is conducting the search and seizure.  "Further, the Court of Appeals found that
prior case law rejected the notion that the presence of law enforcement officers and
the possibility that the search could uncover information leading to a criminal
charge inevitably converted a search into a law enforcement search requiring
probable cause and a warrant. *Id.* at 492-94 (citing *U.S. v. Nechy*, 827 F.2d 1161,
1163 (7th Cir. 1987) (search found to be workplace search despite the presence and
assistance of narcotics detectives because the search was objectively reasonable
despite the subjective motives of the agency personnel); *Shields v. Burge*, 874 F.2d
1201, 1202 (7th Cir. 1989) (search found to be a workplace search despite the
possibility of uncovering evidence of criminal wrongdoing).  *Snider v. Pekney*, 2010
U.S. Dist. LEXIS 17161, *15, 2010 WL 724506.

belongings, the contents of her desk, her filing cabinets, and other areas over which she had authority exclusive of Mr. Garbutt.

Entry of a person's office for legitimate purposes, such as signing an attendance roster, does not give permission to such individuals to search a person's desk or filing cabinets and take things out of the office without the office holder's permission. Ms. Shelton's office was not a public space, but a private office which she could and did close and lock as the occasion required.

Even if this Court were to find that Ms. Shelton had a diminished expectation of privacy in her office, it does not follow that she had no reasonable expectation of privacy in her desk, filing cabinets, shelves, and other spaces within her office, or on the floor over which she had authority exclusive of Stafford Garbutt, against searches and seizures by government agents for the purpose of finding evidence of criminal conduct. The examples provided by the government all include instances when Ms. Shelton is in her office and aware of who is coming and going. No examples are provided of Ms. Shelton being aware of, or having given permission to Stafford Garbutt, or anyone else to rifle through her desk or other areas in her office when she was not present. In fact, Ms. Shelton testified at trial that she gave no such permission to Mr. Garbutt or anyone else. Having individuals come into one's office at work no more gives permission to those individuals to go through one's desk, filing cabinets or other areas, than inviting a guest into

one's home gives up all right to the privacy one has the right to expect in

one's desk, bookshelves, drawers, closets, medicine cabinets and other areas.

B.    Ms. Shelton's First Amendment argument in support of her
      Motion for Mistrial has not been waived and merits
      consideration.

The government misunderstands Ms. Shelton's argument that in the

case of political expression – information protected by the First Amendment -

the constraints of the Fourth Amendment are applied with greater rather

than the lesser attention advocated by the government.  The motion for

mistrial is based on the government's failure to fulfill its obligations under

*Brady* and *Giglio* to inform defense counsel that FBI agent Holbrook directed

informant Stafford Garbutt to undertake an unwarranted – and unlawful –

series of searches and seizures – before office hours in order to secure

information that would subsequently be used to secure a search warrant for

the offices of Ms. Shelton and others at the CTTO.  The Motion for Mistrial is

not simply about the filing of a Motion to Suppress, a motion to suppress

would have been filed if the unknown information had been provided prior to

trial.  Instead, defense counsel and the court were surprised by the testimony

that came out on cross-examination of two of the government's witnesses at

trial- the informant and the agent.

For these reasons, arguments about "waiver" – the knowing and voluntary

giving up of recognized rights – and "forfeiture" – the failure to assert certain rights

in a timely manner, have no place at this point in the litigation. "Waiver is different

from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938); see, *e. g., Freytag* v. *Commissioner*, 501 U.S. 868, 894, n. 2, 115 L. Ed. 2d 764, 111 S. Ct. 2631 (1991) (SCALIA, J., concurring in part and concurring in judgment) (distinguishing between "waiver" and "forfeiture"); Spritzer, Criminal Waiver, Procedural Default and the Burger Court, 126 U. Pa. L. Rev. 473, 474-477 (1978) (same); Westen, Away from **Waiver**: A Rationale for the **Forfeiture** of Constitutional **Rights** in Criminal Procedure, 75 Mich. L. Rev. 1214, 1214-1215 (1977) (same).United States v. Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508, 519, 1993 U.S. LEXIS 2986, *15, 61 U.S.L.W. 4421, 93 Cal. Daily Op. Service 3040, 93 Daily Journal DAR 5188, 7 Fla. L. Weekly Fed. S 205

Ms. Shelton did not knowingly and voluntarily give up the right to raise the issue that first became apparent at trial.  On the contrary, her motion for mistrial and trial objections were the first and proper steps that she could take to make the court and counsel aware of the issue.  There has been neither waiver nor forfeiture of the Motion for Mistrial and the reasons therefore.  Had Ms. Shelton neglected to object at trial, request the Mistrial, and proceed to briefing in accordance with this Court's order, the government would have a basis for claiming forfeiture of the issue on appeal.  Claims of waiver and forfeiture at this stage are premature and not well-founded under the circumstances of this case.

The Motion to Dismiss the indictment, filed well in advance of trial –
in view of the government's request to continue the case for several months
for its own reasons – was denied as untimely by this Court and will be the
subject of an appeal – but its subject matter has nothing to do with issues
before the Court in the Motion for Mistrial.  The government's reference to
this Motion does not illuminate any issue currently before the Court.  Govt.
Resp. 18.

The government's attempts to sidetrack the central issue raised by the
Motion for Mistrial notwithstanding, the appropriate remedy in this case for
failing to disclose impeaching information so that the matter could have been
raised pre-trial, instead of mid-trial, when the matter was first revealed, is to
grant Ms. Shelton's Motion for Mistrial.

III.   Granting a Motion for Mistrial in this case is the appropriate remedy,
       based on the government's failure to disclose information that would
       have led to a valid Motion to Suppress Evidence, the result of which
       would have been a dramatically different trial.

The ultimate question in deciding whether to grant a mistrial is whether the
defendant has been deprived of a fair trial.  "It is presumed that the trial judge is in
the best position to determine whether a cautionary instruction, rather than a
mistrial, is sufficient to address any potential prejudice. *Canino,* 949 F.2d at 937;
*see also United States v. Tejeda,* 481 F.3d 44, 53-54 (1st Cir. 2007) (stating that the
district judge is in the best position to assess the candor and credibility of the jurors
during the *voir dire* following a motion for mistrial). Nevertheless, when reviewing
the denial of a mistrial in this context, this Court must ultimately determine

17

whether the defendant was deprived of a fair trial. *United States v. Clarke,* 227 F.3d 874, 881 (7th Cir. 2000)." *United States v. Manni*e, 509 F.3d 851, 856, 2007 U.S. App. LEXIS 28683, *11.

In Ms. Shelton's case, there was no ability to correct the wrong caused by the government, either prior to trial, or during the trial.  The jury did not know that the FBI agent in this case had directed the informant to conduct a warrantless search of the CTTO offices, including Ms. Shelton's office, that the information so acquired illegally was used to secure a warrant, in accordance with which evidence was obtained and introduced against Ms. Shelton at trial.  Nor was the jury informed that the government withheld the relevant information from defense counsel, depriving counsel of the ability to challenge the illegal search and its subsequent use.  There was no way to seek or ask for a curative instruction, or any other remedy for the illegal conduct – apart from requesting a mistrial.

The government asserts that no evidence taken during the illegal search by Stafford Garbutt was introduced at trial, when in fact, all of the evidence introduced at trial was the fruit of the poisonous tree.  *Wong Sun v. United States,* 371 U.S. 471 (1963).  Counsel argued this before the District Court during trial when making the oral motion for mistrial and so is not raising the matter for the first time in this written motion and reply in support of the oral motion.  The government was on notice that counsel had taken this position and has in fact responded to the argument at length in its filing.  Govt. Resp.  21-25.

The Supreme Court has long held that "[t]he ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, *or if information [\*\*\*484] obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.* [emphasis added]  *Murray v. United States*, 487 U.S. 533, 542, 108 S. Ct. 2529, 2536, 101 L. Ed. 2d 472, 483-484, 1988 U.S. LEXIS 2881, \*16, 56 U.S.L.W. 4801.

The government cannot say that the information presented to the Magistrate who issued the warrant did not include information seized from Ms. Shelton's desk, filing cabinets, drawers, office and storage areas.  In fact, it concedes that this much is true.  Govt. Resp. 24.  The government presents no argument that the independent source doctrine applies in this case, since there is no independent source – the informant's testimony about the items he illegally seized in support of his mere words was critical to establishing his credibility.  It is not simply a matter of removing paragraphs and guessing about the likely result.

Furthermore, the question of the suppression is not the only issue.  The government has not addressed at all the problem presented by the its failure to disclose the fact of the warrantless searches and seizures, that they were directed by the FBI agent, in consultation with government prosecutors – as represented at

the time the motion was made – and that knowingly illegally obtained evidence was used to support a warrant.

Approving what happened in this case, by failing to grant the motion for mistrial, puts the Court's imprimatur on trial by ambush, allowing the government to knowingly engage in illegal conduct, rely on that conduct to obtain evidence cloaked in the legality of a search warrant, and then introduce that evidence at trial without revealing the misconduct to the jury. Ms. Shelton did not receive a fair trial. Had the jury known about the misconduct, its view of the evidence may have been very different. In this case, it is not possible to claim that it would have made no difference, where the jury claimed to have been hung on all counts and both defendants, and then split the verdict when the Court required them to continue deliberations.

Government misconduct has been found to be a basis for mistrial when it is not revealed to the defense. "… *Giglio* required the prosecution to disclose all material information "casting a shadow on a government witness's credibility," *id.* (citing *Bernal-Obeso*, 989 F.2d at 333-34), and that the suppressed evidence "would have provided a fertile basis for defense counsel to probe bias and motives," *id.* [The Court] ruled that it was "reasonably probable that if effectively used, the suppressed evidence may have caused the jury to reject some or all of the testimony of the El Rukn inmate witnesses." *Id.* (citing *United States v. Wallach*, 935 F.2d 445, 454 (2d Cir. 1991)). [The Court] therefore ordered that a new trial was required in the interest of justice. *Id." United States v. Doyle*, 121 F.3d 1078, 1082, 1997 U.S.

App. LEXIS 20508, *6.  Had the jury learned in Ms. Shelton's case that the FBI agent had directed the informant to engage in illegal conduct with the knowledge of the supervising prosecutor at the time, it may have caused the jury members to reject the credibility of informant, the agent, and the reliability of the government's case.  This Court has no way of measuring the degree to which the informant's use and the FBI agent's determination that he was worth relying on depended upon the documents the informant was able illegally to obtain to support his allegations, particularly in view of his many admitted motives for cooperating with the government:  lack of prosecution, loss of status, pay-cut, loss of use of company vehicles, personal romantic rejection by Mary Elgin, and his admitted lies to the agent and others in his personal life.

Courts do not generally countenance trial by ambush. In the civil context there are rules to prevent this, but it also is disfavored in the criminal context.  For example, in *United States v. Andrews*, 1991 U.S. Dist. LEXIS 17897, *1, 1991 WL 267758, "The court held that the government's actions amounted to a trial by ambush and constituted a mid-trial surprise which deprived defendant of an opportunity to investigation the government's allegations. The court held that allowing the challenged evidence would deprive defendant of the essential elements of a fair trial." In Ms. Shelton's case, the revelation that the FBI agent had directed the informant's illegal conduct also constituted a mid-trial surprise that did not allow the defense sufficient time or opportunity to respond to it in a meaningful way.

WHEREFORE, defendant ETHEL SHELTON, through her attorney, respectfully requests that this Court grant her Motion for a Mistrial, based on the government's misconduct in directing an informant to conduct illegal searches and seizures of documents and other information from the offices of his colleagues, in violation of the Fourth Amendment to the United States Constitution; in relying, in whole, or in part, on that information to seek a search warrant, without disclosing that the information relied upon was illegally obtained, in violation of the Fourth Amendment; and by failing to meet its obligations under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), *Giglio v. United States,* 405 U.S. 150, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972), and their progeny, in withholding the fact of the informant's illegal searches and seizures from the defense until such events were disclosed by the government's own witnesses in the middle of trial, when it was too late to bring a pre-trial Motion to Suppress Evidence or to dismiss the indictment based on governmental misconduct, in violation of the Fifth Amendment right to Due Process and the Sixth Amendment right to a Fair Trial.


DATE:        JULY 30, 2018        Respectfully submitted,

                                 By:    s/Andréa E. Gambino
                                        Attorney for Ethel Shelton

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on JULY 30, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which sent notification of

such filing to the following:

Maria Lerner, Esq.
Abizer Zanzi, Esq.
Assistant United States Attorneys

and I hereby certify that I have mailed by United State Postal Service, or hand-

delivered the document to the following non-CM/ECF participants:  N/A.

DATE:          JULY 30, 2018              Respectfully submitted,


                                  By:     s/Andréa E. Gambino
                                          Attorney for Ethel Shelton

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois  60604
(312) 322-0014
agambinolaw@gmail.com