# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cr-129-JVB-JEM |
| | ) | |
| ETHEL SHELTON | ) | |

## OPINION AND ORDER

Defendant Ethel Shelton moves for a mistrial in response to witness testimony suggesting that a government informant conducted an illegal search. While this Court denies Defendant's motion, it cannot help but note the open-ended scope of the informant's evidence hunt on Defendant's work desk. Although the government stayed within the bounds of the legal limits, this may have been more by luck than by design.

### A. Overview of the Case

In April 2018, this Court held a jury trial for Defendant, a former employee of the Calumet Township Trustee's Office ("CTTO"). (DE 178.) She was charged with engaging in political campaign activities on CTTO time, which amounted to wire fraud. (DE 1.) At the time, she worked for Mary Elgin, former trustee of Calumet Township and a co-defendant who pled guilty.[1] (DE 236.) During the trial, the government called as witnesses FBI Agent Nathan Holbrook, as well as Stafford Garbutt, the informant and Defendant's co-worker. (DE 179, 180, 184, 189.) Garbutt testified that, at Agent Holbrook's request, he collected documents from within Defendant's office "very early in the morning." (DE 257 at 210–11.) Agent Holbrook conceded that he instructed Garbutt to collect documents and that Garbutt "was acting as a law

---

[1] The trustee, an elected official, heads the CTTO, which "provide[s] assistance to those in need." (DE 257 at 14.)

1

enforcement agent" during these document hunts, which were warrantless. (DE 258 at 70, 80–81.) The documents partly formed the basis for a subsequent search warrant. (DE 234 Ex. F.) During cross-examination, Defendant accused Agent Holbrook of "consciously violating . . . Fourth Amendment Rights," which drew an objection. *Id*. A lengthy bench conference then ensued to discuss the implications of Agent Holbrook's testimony. (DE 258 at 71–80.) Defendant orally moved for a mistrial, but rather than interrupt the trial, this Court set a post-trial briefing schedule on the motion. (DE 205.) This Court then held an evidentiary hearing on the motion, at which neither party chose to present additional evidence. (DE 258.)

**B.     Standard of Review**

"Generally, a mistrial is appropriate when an event during trial has a real likelihood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has been deprived of a fair trial." *United States v. Collins*, 604 F.3d 481, 489 (7th Cir. 2010). "A trial judge has broad discretion in deciding whether, in the context of the entire trial, a defendant's motion for a mistrial should be granted." *United States v. Mealy*, 851 F.2d 890, 902 (7th Cir. 1988). Trial judges are often "in the best position to determine whether [an] incident was so serious as to merit a mistrial." *United States v. Liefer*, 778 F.2d 1236, 1245 (7th Cir. 1985). The ultimate question is whether "the defendant was deprived of a fair trial." *United States v. Mannie*, 509 F.3d 851, 856 (7th Cir. 2007).

**C.     Analysis**

Defendant's motion is essentially a belated motion to suppress. The government argues that there were enough kernels of information presented before trial to file a timely a motion to

suppress, but the pretrial discovery does not paint as complete a picture as the government suggests. Nevertheless, the government requests that this Court address Defendant's motion on the merits regardless. (DE 248 at 5.) Here, Defendant's motion fails on the merits.

**(1)    Defendant Had No Reasonable Expectation of Privacy in Her Office**

The government concedes that Garbutt acted as a government agent. (DE 234 at 11.) Additionally, the government does not allege that any search-warrant exception applies. (*Id*. at 11 n.6.) Thus, any search, if one occurred, would be unreasonable. The government contends that Defendant had no reasonable expectation of privacy in her office and that therefore Garbutt's document hunts were not searches. This Court agrees.

The Constitution provides protections from "unreasonable searches and seizures." U.S. Const. amend. IV. A search occurs when the government "violates a[n] . . . expectation of privacy" that is both subjective—the defendant actually expected privacy—and objective— "society [would] recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001). The defendant bears the burden of proving a "legitimate expectation of privacy in" the searched premises. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). Here, even if Defendant subjectively believed her office would remain private, this expectation was unreasonable.

As a starting point, an expectation regarding one's home tends to be especially reasonable. *See Payton v. New York*, 445 U.S. 573, 601 (1980) (discussing "the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic"). One's office could also be considered a home for Fourth Amendment purposes. *Mancusi*, 392 U.S. at 367 ("[T]he word 'houses,' as it appears in the [Fourth] Amendment, is not to be taken literally, and . . . the protection of the Amendment may extend to commercial

premises."). However, an office is not a fortress of solitude. *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) ("An office is seldom a private enclave free from entry by . . . other employees.").

Indeed, an office with an open-door policy such that any co-worker may simply waltz in whenever he pleases may not be entitled to any expectation of privacy. *Id*. at 718. *See also United States v. Jenkins*, 43 F.3d 447, 460 (7th Cir. 1995) ("[B]ecoming an 'agent' for purposes of Fourth Amendment analysis does not terminate one's right to engage in conduct which was authorized prior to entering the agency relationship.") An employer's policy of conducting workplace searches, if made known to the employee, could also render an expectation of privacy unreasonable. *Snider v. Pekney*, 2010 U.S. Dist. LEXIS 17161 (N.D. Ind. Feb. 25, 2010). Still, the employee might have a reasonable expectation of privacy "in his desk and file cabinets," depending on the circumstances. *Id*.

Here, several factors extinguish Defendant's reasonable expectation of privacy. First, Garbutt had to enter Defendant's office to sign his time sheets. (DE 258 at 198.) Second, Garbutt passed by her office to visit Elgin's office, which he did regularly. (DE 193.) Third, Garbutt would often wander into Defendant's office. *Id*. Fourth, Garbutt was often the first to arrive at work. (DE 257 at 168–69.) Even if Defendant did not know this, she herself started work early from time to time, and she knew of the "comp time" system, in which employees would receive benefits for arriving early or staying late. (DE 193.) Defendant was therefore on notice that her co-workers might take advantage of this opportunity by arriving early. Fifth, Elgin had security cameras plastered throughout the offices. *Id*. As Defendant testified, "Anything that happened in that office [Elgin] could see." *Id*. Defendant knew Elgin often reviewed the footage these cameras captured. *Id*. Sixth, the CTTO had a company policy of conducting workplace searches of "[e]mployees, their possessions, and CTTO-issued [items] . . . at all times while on CTTO

premises." (Tr. Ex. 27 at 64.) Defendant acknowledged receiving an employee handbook that outlined this policy. (Tr. Ex. 55.) Seventh, and most importantly, Defendant left the documents on her desk. (DE 234 Ex. E at 2) ("CHS provided . . . [a] letter . . . which was discovered by CHS on Ethel Shelton's desk."). Thus, even if Defendant had a reasonable expectation of privacy *in* her desk, no reasonable person would expect privacy as to documents laying *on* a desk in what amounts to a monitored, high-traffic area subject to random searches.

**(2)     The Warrant Was Valid Even Without the Collected Documents**

Even if Garbutt's document hunts constituted an unreasonable search, the government did not offer the collected documents at trial. However, Agent Holbrook's affidavit in support of a search warrant (the "Warrant Affidavit"), upon which a later search warrant was issued, referenced many of those documents. (DE 234 Ex. F.) On that note, Defendant contends that the warrant's validity rested solely on Garbutt's credibility, which itself rested solely on the collected documents. (DE 268.) Thus, as Defendant puts it, removing the documents destroys Garbutt's credibility, and "what is left is very slim." *Id*. While this logic is certainly sound, Defendant gives too little credit to Agent Holbrook's investigation.

To obtain a search warrant, a "neutral and detached magistrate" must first find probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975). Probable cause exists when, "based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). This cannot be based solely on the say-so of an informant. *Recznik v. Lorain*, 393 U.S. 166, 168 (1968). Nor can it be based primarily on illegally seized evidence. *United States v. Oakley*, 944 F.2d 384, 386 (7th Cir. 1991). If the warrant is invalid,

any evidence obtained in the ensuing search could be excluded as "fruit of the poisonous tree."[2] *Segura v. United States*, 468 U.S. 796, 804 (1984). However, where the search warrant is supported by both properly obtained and illegally seized evidence, the warrant will survive if the proper evidence, by itself, establishes probable cause. *Oakley*, 944 F.2d at 386.

Here, the Warrant Affidavit relied heavily on information Garbutt provided, and a noticeable portion of the section on Ethel Shelton contained references to the collected documents. (DE 234 Ex. F. at 31–35.) But an equally noticeable portion relied on recordings, none of which Defendant challenges as illegally obtained. For instance, the Warrant Affidavit recounts recordings showing Defendant engaging in campaign activities during CTTO hours. *Id.* at 22–23. Additionally, when Garbutt mentioned that Defendant would be heading to a certain location to perform campaign activities on CTTO time, Agent Holbrook went to that location and saw Defendant's car parked nearby. *Id.* at 25. Thus, Garbutt's credibility also rested on the recordings and Agent Holbrook's independent investigation, so even after removing the collected documents from the equation, a reasonable person could still conclude that a search of Defendant's office would reveal evidence of a crime. *Cf. Oakley*, 944 F.2d at 388 ("Corroborative efforts of officials investigating the case can turn an otherwise dubious informant's tip into a sufficient foundation on which a warrant might be issued."). In the end, the collected documents, even if they were illegally obtained, did not corrupt the search warrant.

**(3) These Facts Do Not Trigger First Amendment Concerns**

Defendant next argues that the collected documents constitute protected political and

---

[2] The government argues that Defendant waived this argument by failing to raise it in her brief. (DE 234 at 21.) However, Defendant did raise the issue in her brief by stating that, had the government told her that Garbutt took instructions from Agent Holbrook, she "could and would have filed appropriate motions . . . to suppress the information obtained by [the] warrant." (DE 222 at 11.) This is enough to put the argument on the table.

campaign speech. (DE 222 at 5.) Thus, Defendant contends, this Court must more heavily scrutinize the search warrant in this case. *Id*. However, Defendant's argument does not tell the whole story, for search warrants only raise First Amendment issues when the warrant allows a seizure of protected speech and the seizure would create a prior restraint. *Maryland v. Macon*, 472 U.S. 463, 470 (1985) ("The risk of prior restraint . . . is the underlying basis for the special Fourth Amendment protections accorded searches for and seizures of First Amendment materials . . . ."). For instance, if Garbutt took campaign flyers from Defendant's office right before an event and thus prevented their distribution, her argument may have merit. *Cf. Marcus v. Search Warrant*, 367 U.S. 717, 736 (1961) ("But there is no doubt that an effective restraint . . . was imposed . . . on the circulation of the publications . . . because all copies on which the police could lay their hands were physically removed."). But she offered no such evidence. Thus, the First Amendment does not apply here.

**(4)** ***Brady* Does Not Demand a Mistrial**

Next, Defendant argues that the government failed to provide exculpatory evidence. Specifically, Defendant faults the government for failing to disclose that (1) Garbutt conducted an illegal search, (2) Agent Holbrook instructed Garbutt to collect documents, and (3) Garbutt collected documents before the work day began. (DE 222 at 10, DE 268.) The government has an obligation to turn over evidence that is "favorable to an accused . . . [and] material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Impeachment evidence is subject to this requirement, especially evidence meant to impeach the

government's main witness. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972).

Here, Defendant failed to show the required reasonable probability. First, as explained above, Garbutt did not conduct an illegal search because Defendant had no reasonable expectation of privacy in her office. Second, Agent Holbrook testified at trial that he asked Garbutt to collect documents. (DE 258 at 70.) Third, Garbutt revealed to the jury that he collected documents early in the morning. (DE 257 at 210–11.) Fourth, Defendant offers no indication of what she would have done differently had she known these facts before trial other than to accuse Agent Holbrook, in front of the jury, of violating her Fourth Amendment rights—which is exactly what she did before the government immediately objected. (DE 258 at 70.) She also cross-examined Agent Holbrook on failing to "seek any kind of judicial permission before [sending] Mr. Garbutt in to look in other people's offices." (*Id.* at 80–81.) Afterwards, Agent Holbrook conceded that the search warrant he eventually obtained was "based on what [he] gathered from" Garbutt. (*Id.* at 81.) In short, the information Defendant contends should have been presented to the jury had, in fact, been presented to the jury. There is thus no reasonable probability that the outcome would have been different had the government disclosed the requested facts.

**D.     Conclusion**

Defendant had no reasonable expectation of privacy in her office. Thus, while the government's conduct raises red flags, no Fourth Amendment violation occurred. Accordingly, Defendant's motion is DENIED.

SO ORDERED on June 20, 2019.

S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE